Kristen J. Nesbit (SBN 242426)
E-Mail:  knesbit@fisherphillips.com
Harrison M. Thorne (SBN 313295)
E-Mail:  hthorne@fisherphillips.com
Jeremy E. Stern (SBN 351412)
E-Mail:  jestern@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendants,
BEHAVIORAL HEALTH PRACTICE SERVICES LLC; LIFESTANCE HEALTH, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA CORONEL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEHAVIORAL HEALTH PRACTICE SERVICES LLC; LIFESTANCE HEALTH, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: 2:25-at-1749<br><br>*[Removed from Sacramento County Superior Court Case No. 25CV027454]*<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>*[Filed Concurrently With Civil Cover Sheet, Declaration Of Marcy Osborn; Declaration Of Harrison M. Thorne; Certificate Of Interested Parties; and Corporate Disclosure Statement]*<br><br>Complaint Filed: November 13, 2025<br>Removal Date: December 12, 2025<br>Trial Date: Not Set |

**TABLE OF CONTENTS**

Page

I. THE STATE COURT ACTION ................................................................................................ 6
II. REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD. ............................. 7
III. THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED. ............ 8
    A. Venue ................................................................................................................................ 8
    B. Timeliness ........................................................................................................................ 8
    C. Service and Filing of Notice ............................................................................................. 8
IV. THE U.S. DISTRICT COURT HAS JURISDICTION PURSUANT TO THE CLASS ACTON FAIRNESS ACT. ................................................................................................................. 8
    A. The Numerosity of Class Members Requirement is Satisfied. ....................................... 9
    B. Complete Diversity Exists Between Plaintiff and Defendant. ......................................... 9
        1. Plaintiff Is Domiciled in the State of California. ........................................................ 9
        2. Defendants are Diverse from Plaintiff's Domicile. ................................................... 10
    C. The Amount in Controversy Exceeds the Jurisdictional Minimum Under CAFA. ..... 11
        1. Minimum Wage ......................................................................................................... 12
        2. Overtime .................................................................................................................... 13
        3. Meal Periods ............................................................................................................. 14
        4. Rest Breaks ............................................................................................................... 14
        5. Inaccurate Wage Statements ..................................................................................... 15
        6. Waiting Time Penalties ............................................................................................. 15
        7. Attorneys' Fees ......................................................................................................... 16
        8. Summary of Amount in Controversy ....................................................................... 16
V. CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank One, Texas, N.A. v. Montle*,
    964 F.2d 48 (1st Cir. 1992) ............................................................................................. 9

*Chavez v. JPMorgan Chase & Co.*,
    888 F.3d 413 (9th Cir. 2018) ........................................................................................... 16

*Cosgrove v. Bartolotta*,
    150 F3d 729 (7th Cir. 1998) ............................................................................................ 10

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014) ..................................................................................................... 7, 11

*Garnett v. ADT LLC*,
    74 F. Supp. 3d 1332 (E.D. Cal. 2015) ............................................................................... 7

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) .......................................................................................................... 10

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ......................................................................................... 11

*Jasso v. Money Mart Exp., Inc.*,
    No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ............................... 16

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) ............................................................................................. 9

*Lewis v. Verizon Commc'ns, Inc.*,
    627 F.3d 395 (9th Cir. 2010) ........................................................................................... 16

*McCann v. Newman Irrevocable Tr.*,
    458 F.3d 281 (3d Cir. 2006) .............................................................................................. 9

*Mejia v. DHL Express (USA), Inc.*,
    No. CV 15-890-GHK ...................................................................................................... 12

*Mitchell v. United States*,
    88 U.S. 350 (1875) ............................................................................................................ 9

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ........................................................................................... 11

*Pineda v. Bank of Am., N.A.*,
    50 Cal. 4th 1389 (2010) .................................................................................................. 13

*Rodriguez v. Cleansource, Inc.*,
   No. 14-CV-0789-L DHB, 2014 WL 3818304 (S.D. Cal. Aug. 4, 2014) .......................................... 16

*United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
   549 F.3d 1204 (9th Cir. 2008) ................................................................................................ 11

**Statutes**

U.S.C. § 84(b) ............................................................................................................................... 8

28 U.S.C. § 1332(a)(1) ............................................................................................................... 10

28 U.S.C. § 1332(c)(1) ............................................................................................................... 10

28 U.S.C. § 1332(d)(2) ........................................................................................................ 8, 9, 11

28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a) ....................................................................... 9

28 U.S.C. §§ 1332(d)(3)-(5) ......................................................................................................... 8

28 U.S.C. § 1332(d)(5) ................................................................................................................. 9

28 U.S.C. § 1332(d)(5)(B) ............................................................................................................ 9

28 U.S.C. § 1332(d)(10) ............................................................................................................. 10

28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 .............................................................................. 6

28 U.S.C. §1441(a) .................................................................................................................. 8, 9

28 U.S.C. §§ 1441(a) and 1446(a) ............................................................................................... 8

28 U.S.C. § 1441(b)(1) ............................................................................................................... 11

28 U.S.C. § 1446 .......................................................................................................................... 8

28 U.S.C. § 1446(a) .......................................................................................................... 7, 8, 11

28 U.S.C. § 1446(b) ..................................................................................................................... 8

28 U.S.C. § 1446(d) ..................................................................................................................... 8

28 U.S.C. § 1453(b) ................................................................................................................... 11

CAFA .................................................................................................................................. *passim*

Cal. Code Civ. Proc. § 340(a) .................................................................................................... 15

Cal. Lab. Code § 226(e) ............................................................................................................. 15

California Labor Code Section 203 .................................................................................................. 15

California Labor Code Section 1194 ................................................................................................ 13

California Labor Code Section 1197.1 ............................................................................................. 13

Class Action Fairness Act of 2005 ..................................................................................................... 8

CLASS ACTON FAIRNESS ACT .................................................................................................... 8

Labor Code section 226 .................................................................................................................... 15

**Other Authorities**

Federal Rules of Civil Procedure Rule 8(a) ....................................................................................... 7

**TO PLAINTIFF AND HER COUNSEL OF RECORD AND TO THE CLERK FOR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

1. PLEASE TAKE NOTICE that Defendants BEHAVIORAL HEALTH PRACTICE SERVICES LLC ("BHPS") and LIFESTANCE HEALTH, INC. ("LifeStance") ("Defendants") through their counsel of record, submit this petition for removal of this case from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. The grounds for removal are as follows:

**I.   THE STATE COURT ACTION**

2. On or about November 13, 2025, Plaintiff Margarita Coronel filed an unverified Class Action Complaint ("Complaint") in the Superior Court of the State of California, in and for the County of Sacramento, thereby initiating the civil action entitled "*MARGARITA CORONEL v. BEHAVIORAL HEALTH PRACTICE SERVICES LLC, et al.,* Case No. 25CV027454 (hereafter, the "State Court Action"). A true and correct copy of the Complaint is attached as **Exhibit A** to the Declaration of Harrison M. Thorne ("Thorne Decl.").

3. The County of Sacramento is within the territory of the United States District Court for the Eastern District of California.

4. Plaintiff's Complaint asserts causes of action for: (1) Failure to Pay Minimum Wages, Regular, and Overtime Wage; (2) Failure to Provide Meal Periods; (3) Failure to Permit Rest Periods; (4) Failure to Provide Accurate Itemized Wage Statements; (5) Failure to Timely Pay All Wages Due During Employment and Upon Separation From Employment; and (6) Violation of Unfair and Unlawful Business Practices. *See* Thorne Decl.*,* **Exh. A**.

5. This case is brought by Plaintiff as a class action. Specifically, Plaintiff seeks to represent a putative class consisting of "all individuals currently or formerly employed by Defendants as non-exempt or hourly-paid employees in the State of California at any time between four years prior to the filing of this action and the date of class certification." *Id*., **Exh. A**, at ¶ 19. Plaintiff alleges that the proposed putative class consists of more than 100 individuals. *Id*., **Exh. A**, at ¶ 23.

6. The Complaint was personally served on Defendants on or about November 14, 2025.

(Thorne Decl. ¶ 3.)

7.  Defendants each filed an Answer in the Superior Court of California, County of Sacramento, on December 11, 2025. *See* Thorne Decl., ¶ 4, **Exh. I, J.**

8.  DOES 1 through 50, inclusive, have not been identified, and there is no record or indication that any Doe defendants have been served with the Summons or the Complaint in the State Court Action.

9.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all other process, pleadings, and orders served on Defendants are attached as **Exhibit A** (Complaint), **Exhibit B** (Civil Case Cover Sheet), **Exhibit C** (Summons), **Exhibit D** (Notice of Case Assignment and Case Management Conference), **Exhibit E** (Proof of Personal Service), **Exhibit F** (Proof of Personal Service), **Exhibit G** (Minute Order, Complex Determination), **Exhibit H** (Notice of Minute Order), **Exhibit I** (Defendant BEHAVIORAL HEALTH PRACTICE SERVICES LLC's Answer), **Exhibit J** (Defendant LIFESTANCE HEALTH, INC.'s Answer).

10. No further pleadings have been filed and no further proceedings related thereto have been heard in the Superior Court. Thorne Decl. ¶ 6.

## II.  REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD.

11. In 2014, the U.S. Supreme Court held that a notice of removal is subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure. Accordingly, removal notices need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). This governing principle also applies to a removing party's allegations as to the amount in controversy. *See id.* at 87-89; *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1334 (E.D. Cal. 2015). Only if the Court, or another party, contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of evidence standard. *See Dart Cherokee*, 574 U.S. at 88-89.

12. There is no "presumption against removal" when a defendant seeks to remove pursuant to the CAFA. *See Dart Cherokee*, 574 U.S. at 89.

/ / /

III.   **THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED.**

    A.   **Venue**

13.   In accordance with 28 U.S.C. section 1446(a), this Notice is filed with the District Court of the United States in which the Action is pending. The Superior Court of California, County of Sacramento is located within the Eastern District of California. *See* U.S.C. § 84(b). Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. §1441(a). Thus, this Court is the proper district court to which this case may be removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

    B.   **Timeliness**

14.   Defendants were personally served with the Summons and Complaint on or about November 14, 2025. (Thorne Decl. ¶ 3.). This removal is timely filed as required by 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days of the date of first service of the State Court Action on Defendants and within one year of the date the State Court Action was filed.

    C.   **Service and Filing of Notice**

15.   In accordance with 28 U.S.C. § 1446(d), Defendants are serving a copy of this Notice upon counsel for Plaintiff, and Defendants will file copies of this Notice with the Clerk of the Superior Court of California in the County of Sacramento and with the Clerk of the Eastern District of California. Defendants will promptly file true and correct copies of the Proof of Service regarding the Notice of Removal to Plaintiff and the state court.

IV.   **THE U.S. DISTRICT COURT HAS JURISDICTION PURSUANT TO THE CLASS ACTON FAIRNESS ACT.**

16.   On February 18, 2005, Congress enacted the Class Action Fairness Act of 2005 ("CAFA"). CAFA gives U.S. District Courts original jurisdiction over civil class action lawsuits in which any member of the putative class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. While there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. §§ 1332(d)(3)-(5), no such exceptions apply here.

17. This Court has original jurisdiction of this action under CAFA. As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a) as (1) the proposed class exceeds 100 members, (2) this is a putative class action in which at least one putative class member is a citizen of a different state than Defendant, and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Further, no defendant identified in the Complaint is a state, officer of a state, or a governmental agency. 28 U.S.C. § 1332(d)(5).

### A. The Numerosity of Class Members Requirement is Satisfied.

18. CAFA's requirement that the class have at least 100 members is satisfied. See 28 U.S.C. § 1332(d)(5)(B). Plaintiff alleges that the putative class includes more than 100 individuals. Thorne Decl., **Exh. A**, at ¶ 23. Moreover, Defendants' records reveal that the putative class consists of approximately 485 putative class members. See Declaration of Marcy Osborn ("Osborn Decl.") ¶ 5. As such, the putative class is greater than 100 persons and the CAFA numerosity requirement is satisfied. See 28 U.S.C. § 1332(d)(5)(B).

### B. Complete Diversity Exists Between Plaintiff and Defendant.

19. The CAFA requires only minimal diversity. The CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens, when one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or when one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

*1. Plaintiff Is Domiciled in the State of California.*

20. Plaintiff was, at the time of the filing of the Complaint, and remains as of the filing of this Notice of Removal, a resident and citizen of the State of California. Plaintiff alleges in his Complaint that he is and was a resident of the State of California at all relevant times. See e.g., Thorne Decl., **Exh. A**, at ¶ 10. Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). An existing domicile is presumed to continue. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 288 (3d Cir. 2006); *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48 (1st Cir. 1992). Therefore, "domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States,* 88 U.S. 350,

1  353 (1875). Plaintiff is therefore a citizen of the State of California. *See* 28 U.S.C. § 1332(a)(1).

2      21.    Moreover, the putative class purports to include current employees located in California as well. Thorne Decl., **Exh. A**, at ¶ 19. Nothing in the Complaint suggests otherwise. Accordingly, Plaintiff is domiciled in and is a citizen of the State of California.

   *2.   Defendants are Diverse from Plaintiff's Domicile.*

   21.    A corporation is deemed to be a citizen of the state in which it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The phrase "principal place of business" "refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This is the corporation's "nerve center." *Id*. at 78. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters…." *Id*. The headquarters is the place from which the corporation's business activities are directed, controlled, and coordinated. *Id*.

   22.    LifeStance was at the time of the filing of this action, and continues to be, a corporation organized under the laws of Delaware. Osborn Decl., at ¶ 6. LifeStance was incorporated in Delaware on May 22, 2015. *Id*. LifeStance maintains its corporate headquarters and principal place of business in Arizona. *Id*. Nearly all high-level decisions about LifeStance's business are made from its headquarters in Scottsdale, Arizona. *Id*. None of the Company's officers are located in California. *Id*. LifeStance is therefore a citizen of Delaware and Arizona, but not California.

   23.    At all times relevant herein, BHPS has been and continues to be structured as a limited liability company. See Osborn Decl., ¶ 7.

   24.    For purposes of assessing diversity, courts look to the citizenship of each member of a limited liability company. *Cosgrove v. Bartolotta*, 150 F3d 729, 731(7th Cir. 1998) ["[T]he citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members."]. BHPS has a single member: LifeStance. *Id*. As described above, LifeStance is, and has been during the relevant time period, a corporation with citizenship in Delaware and Arizona because LifeStance is incorporated in Delaware and maintains its headquarters and principal place of business in Arizona. Therefore, Defendants are, and have been since the filing of this lawsuit, citizens of the states of Delaware and Arizona. *See* 28 U.S.C. § 1332(d)(10); *cf. Hertz*, 559 U.S. at 78.

25. Defendants Does 1 through 50, inclusive, are fictitious. The Complaint does not set forth the identity or status of any said fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties of this action. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

26. There are no other named co-defendants in this action, and consent of co-defendants is not required for removal under the CAFA. *See* 28 U.S.C. § 1453(b); *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 549 F.3d 1204, 1208-09 (9th Cir. 2008).

27. Based upon the foregoing, minimal diversity is established because at all relevant times, Plaintiff has been a citizen of California, and Defendants have been citizens of Delaware and Arizona.

C. **The Amount in Controversy Exceeds the Jurisdictional Minimum Under CAFA.**

28. This Court has original jurisdiction over the case under the CAFA, in that the case is a civil putative class action wherein the controversy exceeds the sum of $5,000,000, exclusive of interests and costs. See 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

29. The Supreme Court recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. 81 at 89. A defendant's "amount-in-controversy allegation should be accepted" as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal-court jurisdiction. *Id.* at 87. Indeed, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and does not require evidentiary submissions. *Id.* at 83-84; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

30. Plaintiff's Complaint does not allege the total amount of monetary relief in controversy. *See generally* Thorne Decl., **Exh. A**. Nonetheless, while Defendants deny liability as to Plaintiff's

claims, the allegations contained in the Complaint place the amount in controversy in excess of $5,000,000.

31. Where, as here, a plaintiff alleges that a defendant has "adopted and maintained uniform policies, practices and procedures that caused the purported violations of California's [laws]…[i]t is not unreasonable to assume that . . . the company may potentially violate the law in each and every situation where those policies are applied." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCx, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015). In that instance, "a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the complaint." *Id.* Here, Plaintiff alleges that Defendants' policies and practices violated California law in respect to paying minimum, regular, and overtime wages; providing compliant meal periods; and permitting compliant rest periods. Thorne Decl., **Exh. A** at ¶ 77. Further, Plaintiffs allege that such "policies and practices violate California law, causing Plaintiff and Class Members to suffer and continue to suffer injuries-in-fact. *Id.*, **Exh. A** at ¶ 76.

32. Based on the definition of the "class" as set forth in Plaintiff's Complaint, there are approximately 485 putative class members who collectively worked a total of approximately 75,487 shifts during approximately 42,806 workweeks between November 13, 2021 and the present. *See* Osborn Decl., ¶ 5. Since November 13, 2022, approximately 194 putative class members have separated from their employment with Defendants. *See id.* Defendants' non-exempt hourly employees earned an average of approximately $22.92 per hour during the class period. *See id.* Plaintiff's allegations and the above facts demonstrate that the amount placed in controversy through Plaintiff's Complaint exceeds $5,000,000.

   1. *Minimum Wage*

33. Plaintiff's First Causes of Action alleges that "Defendants regularly failed to pay all wages to Plaintiff and Class Members for all hour worked." Thorne Decl., **Exh. A**, at ¶ 40. Specifically, Plaintiff alleges that Defendants regularly failed to pay all wages owed "for all hours worked due to Defendants' policy and practice of failing to pay Plaintiff and Class Members for time spent booting up and logging into Defendants' system before being able to clock in." *Id.*, **Exh. A**, at ¶ 25.

34. Plaintiff's unpaid minimum wages claim is subject to a four-year limitations period under

the UCL. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010). Pursuant to California Labor Code Section 1194, an employee receiving less than minimum wage is entitled to recover the "unpaid balance of the full amount of this minimum wage or overtime compensation". Cal. Lab. Code § 1194.

345. Based on Plaintiff's allegation that Defendants regularly failed to pay putative class members for all hours worked—including but not limited to an alleged policy and practice of not paying employees for time spent booting up and logging into Defendants' system before clocking in–it would be conservative to estimate that each employee incurred at least one hour of unpaid straight-time work per workweek. Pursuant to this assumption for the purpose of calculating a legitimate amount in controversy, the potential liability on Plaintiff's failure to pay minimum and straight time wages claim is **$981,113.52** ($22.92 [average straight time rate] x 1 hour per workweek x 42,806 collective workweeks).

36. Moreover, pursuant to California Labor Code Section 1197.1, an employer who intentionally pays an employee a wage less than the minimum shall be subject to a civil penalty, in the amount of one hundred dollars ($100) for each initial violation, and two hundred fifty dollars ($250) for each subsequent violation for the same offense. Cal. Lab. Code § 1197.1.[1] Here, potential statutory penalties for Defendants' alleged failure to pay minimum wages amounts to **$5,313,500** (($100 initial violation x 485 initial pay periods) + ($250 subsequent violation x 21,060 subsequent pay periods)).

### 2. Overtime

37. Plaintiff alleges that Defendants failed to pay Plaintiff and other putative class members overtime and double-time compensation. Thorne Decl., **Exh. A**, at ¶ 41. Specifically, Plaintiff alleges that Defendants failed to pay "overtime wage for all hours worked due to Defendants' policy and practice of failing to pay Plaintiff and Class Members for time spent booting up and logging into Defendants' system before being able to clock in." *Id.*, **Exh. A**, at ¶ 25. Conservatively assuming each employee incurred at least one hour of unpaid overtime per workweek, the potential liability on Plaintiff's failure to pay minimum and straight time wages claim is **$1,471,670.28** ($22.92 average hourly rate x 1.5

---

[1] Plaintiff does not allege a claim under Labor Code section 1197.1 specifically. However, Plaintiff alleges that Defendants "willfully, knowingly, and/or intentionally failed" to "compensate Plaintiff and Class Members." Thorne Decl., Exh. A, ¶ 30.

overtime rate x 1 hour per workweek x 42,806 collective workweeks).

38. Additionally, Plaintiff alleges that Defendants failed to include nondiscretionary bonuses in Plaintiff and the putative class members' regular rate of pay, and therefore, failed to pay all overtime wages owed. *Id*. As such, Plaintiff alleges she and the purported class "are entitled to recover the unpaid balance of their wages, including minimum, regular, and overtime wages, as well as interest, costs, and attorneys' fees" […] and, "liquidated damages." Thorne Decl., **Exh. A**, at ¶¶ 42-43. Conservatively assuming that 10% of pay periods included bonus compensation that was not factored into the regular rate of pay, the potential liability on Plaintiff's claim is **$10,772.20** (21,545 total pay periods x 10% of pay periods x 1 overtime hour per pay period x $5 [estimated Δ between the amount of wages paid and the amount of underpayment due to alleged miscalculation]).

### 3. Meal Periods

39. Plaintiff alleges that Defendants "failed to provide Plaintiff and Class Members with 30-minute, uninterrupted, duty-free meal periods for every 5 hours worked and failed to pay meal period premiums at their regular rate of pay in lieu thereof." Thorne Decl., **Exh. A**, at ¶ 26. Specifically, Plaintiff alleges that "Plaintiff and Class Members did not receive compliant meal periods for every 5 hours worked because their meal periods were missed, late, short interrupted, and/or they were not permitted to take a second meal period." *Id*., **Exh. A**, at ¶ 49.

40. Conservatively assuming that putative class members received two noncompliant meal periods per workweek, Plaintiff's meal period claim would put **$1,962,227.04** in controversy (2 premiums per week x $22.92 average hourly rate x 42,806 collective workweeks).[2]

### 4. Rest Breaks

41. Plaintiff alleges that Defendants "failed to permit employees to take 10-minute uninterrupted, duty free rest periods for every 4 hours worked or major fraction thereof and failed to pay rest period premiums at their regular rate of pay in lieu thereof." Thorne Decl., **Exh. A**, at ¶ 27. Specifically, Plaintiff alleges that employees were "required to work through their rest periods and/or

---

[2] The actual amount in controversy for this claim would likely be higher, as Plaintiff alleges that certain compensation was not factored into the regular rate, and the regular rate must be utilized for calculating meal period premiums.

were not authorized to take their rest periods." *Id*., **Exh. A**, at ¶ 56.

42. Accordingly, using the same data as above, and assuming two applicable violations per workweek, potential liability at issue on Plaintiff's claim is approximately **$1,962,227.04** (2 premiums per week x $22.92 average hourly rate x 42,806 collective workweeks). [3]

### 5. Inaccurate Wage Statements

43. Plaintiff alleges that Defendants knowingly and intentionally failed to provide compliant itemized employee wage statements. Labor Code section 226 carries penalties in the amount of $50 for the initial pay period, plus $100 for each additional pay period, to a maximum of $4,000 per employee, within a one-year limitation period. Cal. Lab. Code § 226(e); Cal. Code Civ. Proc. § 340(a). There are 6,107 combined pay periods at issue from November 13, 2024, to present. (*See* Osborn Decl., ¶ 5.) As there are approximately 284 individuals at issue during this timeframe, 284 of the pay periods constitute an individual's first pay period within the statutory period and 5,823 subsequent pay periods.

44. As such, at least the following amount is put at issue by Plaintiff's wage statement claim: **$596,500** ((284 x $50 initial pay period penalty) + (5,823 x $100 subsequent pay periods)).

### 6. Waiting Time Penalties

45. Plaintiff alleges that "Defendants failed to pay Plaintiff and Class member wages eared during the pay period within the required time limits." *Id*., **Exh. A**, ¶ 70. Additionally, Plaintiff alleges that "Defendants willfully failed to pay Plaintiff and Class Members their earned wages upon termination, either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ." *Id*., **Exh. A**, ¶ 71. This claim has a three-year statute of limitations, making the cutoff date November 13, 2022. Under this claim, Plaintiff may obtain penalties under California Labor Code Section 203, which permits a terminated employee to collect up to 30 days' wages if wages are not paid in full. Cal. Lab. Code § 203.

46. Between November 13, 2022, and the present, 194 putative class members have separated from Defendants. *See* Osborn Decl., ¶ 5. These employees earned an average pay rate of $22.63 per

---

[3] The actual amount in controversy for this claim would likely be higher, as Plaintiff alleges that certain compensation was not factored into the regular rate, and the regular rate must be utilized for calculating rest break premiums.

hour, and worked an average of 7.74 hours per day. *Id.* Accordingly, Plaintiff's waiting time claim puts **$1,019,409.08** at issue [$22.63 average hourly rate x 7.74 hours per day x 30 days x 194 putative class members).

### 7. Attorneys' Fees

47. Accordingly, the amount in controversy on Plaintiff's claims is at least $13,317,419.16

48. Plaintiff seeks attorneys' fees in connection with his wage and hour claims. Thorne Decl., **Exh. A**, ¶¶ 31, 42, 64, 83. Including an additional 25% for attorney fees is warranted in class actions. See *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012); *see also Rodriguez v. Cleansource, Inc.*, No. 14-CV-0789-L DHB, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014). For purposes of considering fees for amount in controversy, the attorneys' fees are not limited to only those incurred prior to removal, but also what plaintiff may recover for violations after removal. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018). Thus, Plaintiff's request for attorneys' fees puts **$3,329,354.79** in controversy ($12,720,919.16 x 25%).

### 8. Summary of Amount in Controversy

48. Based on the above, the total amount in controversy on Plaintiff's claims is at least **$16,646,773.95.**

49. By removing this matter, Defendants do not waive and, to the contrary, reserve, any rights they may have, including, without limitation, all available arguments and defenses, including the right to move to compel Plaintiff's claims to arbitration and the right to assert defenses relating to joint employment or related issues. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

50. Since minimum diversity exists, there are over 100 putative class members, and the amount in controversy exceeds $5,000,000.00, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Sacramento to the United States District Court of the Eastern District of California pursuant to the CAFA.

Dated: December 12, 2025           FISHER & PHILLIPS LLP

By: */s/ Harrison M. Thorne*
Kristen J. Nesbit
Harrison M. Thorne
Jeremy E. Stern

Attorneys for Defendants,
BEHAVIORAL HEALTH PRACTICE
SERVICES LLC, LIFESTANCE HEALTH,
INC.